IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LORI C. WILCOX,

              Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security
Administration,

              Defendant.

Case No. 1:17-cv-00312-AC

OPINION AND ORDER

ALAN S. GRAF
208 Pine St.
Floyd, VA 24091
    Of Attorney for Plaintiff

BILLY J. WILLIAMS
United States Attorney
RENATA GOWIE
Assistant United States Attorney
District of Oregon
1000 SW Third Ave., Suite 600
Portland, OR 97204-1011

MARTHA A. BODEN
Special Assistant United States Attorney
Office of the General Counsel
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075
    Of Attorneys for Defendant

1 - OPINION AND ORDER

*Opinion and Order*

ACOSTA, Magistrate Judge:

Lori C. Wilcox ("Wilcox") seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Based on a careful review of the record, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

*Procedural Background*

Wilcox filed for DIB on May 19, 2013, alleging disability as of March 15, 2011, due to peripheral motor neuropathy; chronic myofascial pain syndrome of the neck and shoulders; chronic parascapular myofascial pain syndrome; upper extremity pain syndrome; upper extremity paresthesia; vascular/neurogenic thoracic outlet syndrome; shoulder impingement syndrome; degenerative lumbrosacral spondylosis; cervical myalgia; degenerative arthritis of the sacroiliac joints. Tr. 200. Wilcox achieved sufficient quarters of coverage to remain insured through December 31, 2016. Tr. 16. Her application was denied initially and upon reconsideration. Tr. 16. A hearing was held on August 25, 2015, before an Administrative Law Judge ("ALJ"); Wilcox was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 16. On November 30, 2015, ALJ Alex Karlin issued a decision finding Wilcox not disabled. Tr. 16-30. Wilcox requested timely review of the ALJ's decision and, after the Appeals Council denied her request for review, filed a complaint in this Court. Tr. 1-5.

\\\\\
\\\\\
\\\\\

*Factual Background*

Born in 1958, Wilcox was 52 years old on the disability onset date. Tr. 196. She completed high school. Tr. 41. She previously worked in orthodontic offices as an orthodontic assistant, appointment coordinator, and financial coordinator. Tr. 225.

*Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502 and 404.920. First, the Commissioner considers whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

3 - OPINION AND ORDER

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(f) and 404.920(f). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner.

At step five, the Commissioner must demonstrate that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

*The ALJ's Findings*

At step one of the sequential evaluation process outlined above, the ALJ found that Wilcox had not engaged in substantial gainful activity since the alleged onset date, March 15, 2011. Tr. 18.

At step two, the ALJ determined Wilcox had the following severe impairments: peripheral demyelinating polyneuropathy; minimal cervical and lumbar degenerative disc and joint disease with a compression deformity at the L1 vertebra; right thoracic outlet syndrome; and fibromyalgia. Tr. 18, 19. The ALJ found that Wilcox's bilateral carpal tunnel syndrome;

atrial fibrillation; insomnia; fatigue; sleep apnea; bursitis of the left foot; osteoporosis; depression; and anxiety were non-severe impairments. Tr. 19, 20.

At step three, the ALJ found that Wilcox's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 21, 22. Because Wilcox did not establish disability at step three, the ALJ continued to evaluate how Wilcox's impairments affected her ability to work during the relevant period. The ALJ found Wilcox had the residual functional capacity ("RFC") to perform modified sedentary work as defined by 20 C.F.R. § 404.1567(b), except that she was restricted to:

> lifting, carrying, pushing, and pulling of 10 pounds occasionally and less than 10 pounds frequently, standing two hours of an eight hour workday, walking two hours of an eight hour workday, and sitting six hours of an eight hour workday. She can use the left foot occasionally for foot controls. The claimant can frequently reach overhead and finger bilaterally. She can frequently climb ramps and stairs, and occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, and scaffolds. The claimant is to never have exposure to unprotected heights, moving mechanical parts, or operation of a motor vehicle.

Tr. 22.

At step four, the ALJ found that Wilcox could perform her past relevant work of accounting clerk or appointment clerk. Tr. 28.

Alternatively, at step five, based on the testimony of the VE and other evidence, the ALJ determined Wilcox could perform other work existing in significant numbers in the national and local economy despite her impairments, including insurance clerk, cost clerk, or front desk receptionist. Tr. 29. Accordingly, the ALJ concluded Wilcox was not disabled under the Act. *Id.*

\\\\\

\\\\\

\\\\\

*Discussion*

Wilcox argues the ALJ failed to give sufficient reasons for rejecting: (1) treating physician Ruth Lowengart's medical opinion; (2) Wilcox's subjective symptom testimony; and (3) the testimony of lay witness Ronald Norris.

I.   Dr. Ruth Lowengart's Medical Opinion

The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Nonetheless, treating or examining physicians are owed deference and will often be entitled to the greatest, if not controlling, weight. *Orn v. Astrue,* 495 F.3d 625, 633 (9th Cir. 2007) (citation and internal quotation omitted). An ALJ can satisfy the substantial evidence requirement by setting out a detailed summary of the facts and conflicting evidence, stating his interpretation, and making findings. *Morgan v. Comm'r Soc. Sec. Admin.,* 169 F.3d 595, 600-01 (9th Cir. 1999). However, "the ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted). Accordingly, the ALJ's reasons for rejecting the treating and examining physicians must be specific and legitimate, and supported by substantial evidence. *See Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014).

Dr. Lowengart, M.D., M.S.O.M.[1], completed a functional capacity evaluation on February 2, 2014, in which she diagnosed Wilcox with idiopathic peripheral demyelinating polyneuropathy; chronic myofascial pain and superficial neuritis of the neck and arms; carpal

---

[1] Member of the Society of Orthopedic Medicine

6 - OPINION AND ORDER

tunnel syndrome; bilateral moderate with atrophy of abductor pollicis brevis; cervical and lumbar spondylosis; SI joint arthritis; cardiac arrhythmia, atrial fibrillation, cardiac enlargement; and major depression. Tr. 560-66. Dr. Lowengart found that these conditions caused a progressive loss of strength, increasing pain, and loss of function, as well as profound weakness in all muscle groups of the upper extremities, muscle atrophy in the fingers and forearms, and moderately weak lower extremities. Tr. 560-61. Furthermore, Dr. Lowengart assessed nausea, dizziness, and drowsiness as side effects of Wilcox's medications, which gave "only palliative relief, at best" and kept Wilcox from operating a vehicle. Tr. 562. Functionally, Dr. Lowengart assessed significant workplace restrictions, including standing or walking for less than two hours, sitting for about four hours, constant interference with attention and concentration, the ability to walk one block before resting, and absences of more than four days per month due to Wilcox's conditions. Tr. 564-66.

The ALJ gave little weight to Dr. Lowengart's opinion. The ALJ noted that Dr. Lowengart assessed a disability onset date of March 2011, matching Wilcox's alleged disability onset date. Tr. 26. However, Dr. Lowengart did not observe Wilcox from June 2010 until April 2013, leading the ALJ to conclude that the doctor primarily utilized Wilcox's testimony to assess the disability onset date. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ permissibly rejected a treating physician's opinion when it was based primarily on properly discredited subjective symptom testimony). The ALJ did not err, as treatment notes from Dr. Albert Newton in March 2011 document anxiety stemming from Wilcox's job, but lack any indication of back, shoulder, or finger pain. Tr. 702. A separate treatment note from Dr. Newton in May 2011 also lacks any mention of pain, and an examination of Wilcox's back demonstrated no tenderness of the spine. Tr. 700. Similarly, the ALJ observed that the record did not show Wilcox's impairments worsened at the March 2011

7 - OPINION AND ORDER

onset date, and Wilcox worked for a number of years with her impairments before March 2011. Tr. 26. The ALJ did not err in granting little weight to Dr. Lowengart's opinion that Wilcox's impaired functioning began in March 2011.

The ALJ also granted little weight to Dr. Lowengart's opinion due to inconsistencies with the record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Specifically, the ALJ stated Dr. Lowengart's sitting, standing, and walking restrictions were inconsistent with the record, which contained no evidence of Wilcox lying down to accommodate her pain. Tr. 26. Additionally, the ALJ stated Dr. Lowengart's manipulative restrictions were inconsistent with the record because Wilcox performed duties of self-care independently and did not use "modified utensils." Tr. 26. The ALJ's reasoning is inapposite. First, Wilcox typically got out of bed "at noon or later," demonstrating she spent a significant of time lying down, in contrast to the ALJ's interpretation of the record. Tr. 820. Second, Dr. Lowengart opined Wilcox could handle or finger objects about 10 percent of the workday, which is consistent with Wilcox's daily activities. Tr. 566. The record reflects Wilcox struggled to blow-dry or wash her hair due to shoulder pain, rarely cleaned her house or drove, and gave up nearly all of her hobbies due to pain. Tr. 820. The ALJ erred in assessing inconsistencies in the record to discredit Dr. Lowengart's opinion.

The ALJ also gave little weight to Dr. Lowengart's opinion because she repeatedly stated that Wilcox was "totally disabled" in treatment notes. Although the ALJ was not required to grant controlling weight on an issue reserved for the Commissioner, the mere fact that a physician opines on a claimant's disability status is not a sufficient reason to discount the findings underlying that opinion. *See Marsh v. Berryhill*, 698 Fed. Appx. 904, 905 (9th Cir. 2017) (the doctor's chart notes informed his opinion that the plaintiff "appear[ed] to be disabled," and the ALJ was required to give clear and convincing reasons for rejecting the

8 - OPINION AND ORDER

doctor's opinion). Therefore, the ALJ erred in granting the doctor's opinion little weight because she opined on Wilcox's disability.

Indeed, Dr. Lowengart's treatment notes beginning in April 2013 demonstrate Wilcox would miss more than four workdays per month, a rate of absenteeism that generally renders a claimant disabled under the Act. Tr. 564-66, 584; *see Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163-65 (9th Cir. 2012) (the VE testified that the plaintiff would be generally unemployable if she missed more than two work days per month). Dr. Lowengart noted that superficial perineural dextrose injections, which only cause an anesthetic effect on unmyelinated nerve fibers, gave Wilcox significant pain relief; if Wilcox did not experience the effects of demyelinating polyneuropathy, these injections would have been wholly ineffective. Tr. 568. Objective examinations of Wilcox's hands showed atrophied muscle tissue, and a Nerve Conduction Study demonstrated carpal tunnel syndrome. Tr. 572, 574. Dr. Lowengart also noted Wilcox endorsed difficulty standing for longer than 20 minutes and experienced tingling and numbness in her lower legs. Tr. 577. An Electromyography confirmed the presence of motor and sensory neuropathy. Tr. 579. Dr. Theerapol Prasertsuntarasai, Wilcox's treating rheumatologist, also observed 16/18 fibromyalgia tender points consistent with a diagnosis of fibromyalgia. Tr. 786. Wilcox reported pain levels ranging from 6/10 to 10/10 and neither Dr. Lowengart nor Dr. Prasertsuntarasal voiced concerns that Wilcox relayed false pain symptoms. Tr. 572, 574, 579, 784. These objective findings, combined with Wilcox's reported pain levels, support Dr. Lowengart's assessment that Wilcox would be absent from work at least four workdays per month.

A number of additional factors point toward granting Dr. Lowengart's opinion greater weight. The length of treatment relationship, frequency of examinations, specialty of the physician, and familiarity with the medical record are factors to be considered when weighing a

9 - OPINION AND ORDER

treating physician's opinion. *Garrison*, 759 F.3d at 1012 n.11. Dr. Lowengart began treating Wilcox on a regular basis in 1999 and continued providing care through the date of the decision, excepting a treatment gap between 2010 and 2013. Tr. 568, 637. Dr. Lowengart is a Member of the Society of Orthopedic Medicine, attesting to his professional competence in the specialization of treatment of musculoskeletal maladies such as those suffered by Wilcox. Additionally, after resuming treatment in 2013, Dr. Lowengart collaborated with a number of other specialists to diagnose and treat Wilcox's impairments, indicating a familiarity with the medical record. Tr. 570, 574, 578, 579, 582. These factors tend to support granting Dr. Lowengart's opinion greater weight.

While the ALJ did not err by granting little weight to Dr. Lowengart's assessment that Wilcox became disabled in March 2011, the ALJ erred in his overall assessment of Dr. Lowengart's opinion because it was consistent with the record and supported by objective medical evidence.

II.   Wilcox's Subjective Symptom Testimony

The Ninth Circuit relies on a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the stated symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 503 F.3d 1028, 1035-36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 503 F.3d at 1036 (citation and quotation marks omitted). Second, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Further, an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation

10 - OPINION AND ORDER

treating physician's opinion. *Garrison*, 759 F.3d at 1012 n.11. Dr. Lowengart began treating Wilcox on a regular basis in 1999 and continued providing care through the date of the decision, excepting a treatment gap between 2010 and 2013. Tr. 568, 637. Dr. Lowengart is a Member of the Society of Orthopedic Medicine, attesting to his professional competence in the specialization of treatment of musculoskeletal maladies such as those suffered by Wilcox. Additionally, after resuming treatment in 2013, Dr. Lowengart collaborated with a number of other specialists to diagnose and treat Wilcox's impairments, indicating a familiarity with the medical record. Tr. 570, 574, 578, 579, 582. These factors tend to support granting Dr. Lowengart's opinion greater weight.

While the ALJ did not err by granting little weight to Dr. Lowengart's assessment that Wilcox became disabled in March 2011, the ALJ erred in his overall assessment of Dr. Lowengart's opinion because it was consistent with the record and supported by objective medical evidence.

## II.   Wilcox's Subjective Symptom Testimony

The Ninth Circuit relies on a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the stated symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 503 F.3d 1028, 1035-36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 503 F.3d at 1036 (citation and quotation marks omitted). Second, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Further, an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation

10 - OPINION AND ORDER

for lying, prior inconsistent statements concerning the symptoms . . . [or] other testimony that appears less than candid." *Id.* at 1284. However, a negative credibility finding made solely because the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence" is legally insufficient. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Nevertheless, the ALJ's credibility finding may be upheld even if not all of the ALJ's rationales for rejecting claimant testimony are upheld. *See Batson*, 359 F.3d at 1197.

The ALJ discounted Wilcox's subjective symptom testimony, arguing that Wilcox failed to follow prescribed courses of treatment. *See Tommasetti*, 533 F.3d at 1039. As noted by the ALJ, Wilcox did not attend therapy sessions to minimize her depression, declined a referral to a pain specialist, failed to consistently use her CPAP machine to reduce sleep apnea, failed to obtain orthotics to reduce her foot pain, and waited six months after a physician prescribed the drug Lexapro to begin her treatment regimen. Tr. 643, 650, 702, 750. Therefore, the ALJ did not err in impugning Wilcox's subjective symptom testimony for failure to follow prescribed courses of treatment.

The ALJ also discredited Wilcox's testimony because she ceased work for reasons other than a disability. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Wilcox ceased working because her boss was a "bully" and contributed to a stressful work environment that aggravated her anxiety. Tr. 583. Dr. Newton opined that, because Wilcox's anxiety decreased after she left her job, Wilcox's anxiety originated from an external source- her supervisor. Tr. 700, 702. Subsequently, Wilcox did not seek out employment at a less stressful workplace, but described herself as "retired," or stated that she stopped working for reasons "not due to health." Tr. 24. While Wilcox argues that she left her job because her pain became unbearable, the ALJ's interpretation of the record was reasonable and must be upheld. *Batson* 359 F.3d at 1193.

The ALJ also rejected Wilcox's subjective testimony due to prior inconsistent statements. *See Tommasetti*, 533 F.3d at 1040. As noted above, Wilcox provided inconsistent explanations for leaving her job, including that she left due to stress, pain, the inability to conform to the physical requirements of the job, or that she "retired." Tr. 43-47. Wilcox also stated that she could only travel up to 90 miles in a motorhome, but travelled to Hawaii without any reported difficulty. Tr. 55-56, 725. Additionally, Wilcox provided vague testimony about the extent and frequency of her exercise routine, and provided contradictory testimony about her shopping habits. Tr. 49-53. Wilcox initially stated that her husband performed the shopping but later stated that she shopped once per month. Tr. 54-55. The ALJ did not err in citing these inconsistencies to impugn Wilcox's subjective symptom testimony.

III. Lay Witness Ronald Norris

Lay witness testimony is competent evidence which an ALJ must take into account unless the ALJ provides specific, germane reasons to disregard the testimony. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *see also Molina v. Astrue*, 674 F.3d 1104, 1114-15 (9th Cir. 2012).

Ronald Norris, Wilcox's husband, submitted third-party adult function reports in July 2013 and August 2015. Tr. 242-49, 273-74. Mr. Norris stated that Wilcox spent most of her day reading or watching television. Tr. 243. She regularly performed household chores, such as cleaning the cat litter box, vacuuming, dusting, and laundry, but could not cook meals or work in the yard. Tr. 243. Mr. Norris stated that Wilcox's pain prevented her from sleeping, engaging in physical and social activities, and thinking clearly. Tr. 243, 246, 273. Mr. Norris also stated that medication helped Wilcox's conditions, but failed to eliminate her symptoms and caused side effects, such as fatigue and cloudy thinking. Tr. 274. Mr. Norris opined that Wilcox was

"unable to perform any manner of productive work" and would not be able to perform any job where they lived. Tr. 249, 274.

The ALJ gave little weight to Mr. Norris's testimony. First, the ALJ stated that Mr. Norris's testimony failed to provide any additional insight or limitations regarding Wilcox's impairments. Tr. 23. The majority of Mr. Norris's testimony parallels the symptoms and limitations described by Wilcox. Despite the ALJ's assertion, however, Mr. Norris described additional limitations omitted from Wilcox's adult function report, including anger, crying, contentiousness, and forgetfulness, as well as an inability to conform to a schedule. Tr. 246, 273-74. Mr. Norris further noted that Wilcox's pain caused lapses in concentration and her ability to converse with others. Tr. 273. Dr. Lowengart also noted Wilcox experienced difficulty concentrating and irritability as a result of her symptoms. Tr. 561. Accordingly, Mr. Norris's testimony provided further insight into the extent and severity of the functional effects of Wilcox's severe impairments, which is precisely the type of competent evidence that the SSA seeks to elicit in providing third-party function report forms. SSR 06-03p. The ALJ's finding was erroneous.

The ALJ also gave little weight to Mr. Norris's testimony because it was inconsistent with the record. While inconsistency with the record is generally a germane reason to discount lay witness testimony, here the ALJ failed to identify any probative inconsistency. Rather, the ALJ found that Wilcox and Norris provided slightly differing accounts of which of them cleaned their cat's litterbox. Tr. 232, 243. It is not clear why the ALJ felt that this detail was material in this case. Even assuming Wilcox occasionally cleans the litterbox, she has not alleged that the task is beyond her capabilities. Wilcox and Mr. Norris provided generally consistent testimony about her functional limitations. Such a minor inconsistency does not fulfill the "specific" and

13 - OPINION AND ORDER

"germane" evidentiary bar necessary to discount Mr. Norris' testimony. *See Molina*, 674 F.3d at 1114-15.

The Commissioner argues that inconsistency with the medical evidence is a specific and germane reason to discount lay witness testimony, citing *Bayliss*. *Bayliss*, 427 F.3d at 1211. *Bayliss* is inapposite; in *Bayliss*, the ALJ identified specific portions of the lay witness testimony contradicting the medical record. *Id.* Here, the ALJ merely stated that Mr. Norris's testimony contradicted "the medical and other evidence of record" without providing examples of such contradictions. Therefore, the Commissioner's argument fails.

The ALJ also noted that Mr. Norris's testimony was less credible because he and Wilcox were married. Tr. 23. This reasoning runs afoul of the general precedent that "friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his or] her condition." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (quoting *Dodrill*, 12 F.3d at 918-19). *But see Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (the ALJ discredited the lay witness testimony due to the witness's "close relationship" with the plaintiff). Although an ALJ is not required to accept the testimony of a spouse, the ALJ must give specific reasons for discounting that spouse's opinion, such as ignorance with the claimant's functional capacity. *Valentine*, 574 F.3d at 694. Here, those reasons were not given, as Mr. Norris testified that he spends the majority of his days with his wife and is familiar with her functional capacity. Tr. 242.

The ALJ further discredited Mr. Norris' testimony because he opined that Wilcox was completely disabled. Tr. 23. The ultimate decision on disability is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1) (the Commissioner is "responsible for making the determination or decision about whether you meet the statutory definition of disability"). Thus, the ALJ did not err in giving Mr. Norris' statements about Wilcox's "complete disability"

14 - OPINION AND ORDER

no weight. Tr. 249. However, after eliminating Mr. Norris's statements regarding disability, his observations of Wilcox's functioning are relevant and must be accepted or rejected for specific and germane reasons.

*Remand*

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harmen v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138–39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (*en banc*)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

15 - OPINION AND ORDER

While the ALJ erred by failing to give sufficient reasons for rejecting the opinions of Dr. Lowengart and Ronald Norris, outstanding issues remain that must be resolved. The ALJ correctly noted that Dr. Lowengart assessed a disability onset date based solely on Wilcox's discredited subjective symptom testimony, and the record does not support Wilcox's alleged disability onset date of March 2011. Dr. Lowengart's other findings, however, were consistent with the record and highly probative.

On remand, and in light of Dr. Lowengart's extensive treatment history with Wilcox, the ALJ must either accept or reject her medical opinion. Similarly, the ALJ must accept or reject Ronald Harris' lay witness testimony for germane and specific reasons. Because the record contains outstanding issues that must be resolved the third prong of the credit-as-true rule is not reviewed. The proper course is to remand this case for further proceedings.

*Conclusion*

Based on the foregoing, the Commissioner's decision denying Wilcox's application for DIB is REVERSED and REMANDED for further proceedings.

DATED this 16th day of April, 2018.

John V. Acosta
United States Magistrate Judge